# VICKSBURG WATERWORKS COMPANY *v.* VICKSBURG.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF MISSISSIPPI.

No. 392. Submitted December 4, 1901.—Decided April 7, 1902.

By the act of March 18, 1886, the city of Vicksburg was authorized to provide for the erection and maintenance of a system of waterworks and the contract made in accordance with its provision was within the power of the city to make, and the subsequent legislation, state and municipal, set forth in the bill, impair the contract rights of the water company, within the protection of the Constitution of the United States unless the city can point to some inherent want of legal validity in the contract.

It is one of the most valuable features of equity jurisdiction, to anticipate
and prevent a threatened injury, where the damages would be insufficient
or irreparable; and the exercise of such jurisdiction is for the benefit of
both parties, in disclosing to the defendant that he is proceeding without
warrant of law, and in protecting the complainant from injuries which,
if inflicted, would be wholly destructive of his rights.

This cause presents a controversy so arising under the laws and Constitu-
tion of the United States as to give the Circuit Court jurisdiction.

THE Vicksburg Waterworks Company, a corporation of the
State of Mississippi, filed, in February, 1901, in the Circuit Court
of the United States for the Southern District of Mississippi, a
bill of complaint against the mayor and aldermen of the city
of Vicksburg, a municipal corporation of Mississippi. To this
bill the city filed a demurrer and certain special pleas, and sub-
sequently moved the court for leave to withdraw the demurrer
and pleas, and for leave to file an answer alleging that said an-
swer embodied all the matters of defence which were set forth
in said pleas and demurrer, and also a motion to dissolve a tem-
porary injunction which had been theretofore granted.

On July 1, 1901, the court entered the following order:

" Coming on to be heard the motion to dissolve the injunction
herein, and the defendant now having moved the court for leave
to file the answer herewith presented and marked by the clerk
as filed June 21, 1901, and to withdraw the pleas and demurrers
filed April 30, 1901, it is ordered that leave be granted to file
said answer and withdraw said pleas and demurrers, but that
the question of the jurisdiction of this court to hear the matter
in controversy, raised by said answer, shall be first presented
and argued."

On July 3, 1901, the complainant moved the court to " re-
quire defendant to elect on which plea it will stand, whether
on demurrer to the whole bill or on the answer." This motion
was overruled, and on July 3, 1901, the court entered the fol-
lowing order and decree:

" This cause coming on to be heard upon the motion to dis-
solve the injunction heretofore issued in this cause, and the court
now being advised in the premises, and it appearing that there
is no Federal question involved in the controversy presented

by the pleading, it is therefore ordered, adjudged and decreed that said injunction be, and the same is hereby, dissolved, and that the bill of the complainant be, and the same is hereby, dismissed, and that execution issue therefor for the cost in the case."

Thereupon the complainant moved the court to "continue the restraining order in force as granted until the appeal in this cause is heard by the Supreme Court of the United States or until the further order is granted by said court."

The following order was then entered by the court:

"Upon the appeal being allowed herein it is ordered that the temporary restraining order herein be continued until the 1st day of January, 1902, or if before then, until the decision of the appeal herein by the Supreme Court, upon condition, however, that the complainant diligently prosecute its appeal and file a motion at or before the next term of the Supreme Court to advance the appeal in this cause upon the docket of the Supreme Court of the United States, and upon the further condition that the injunction bond heretofore given in this case shall stand and continue in force for any additional liability which may be incurred by reason of this order, the principal and sureties upon said bond, now in open court consenting thereto. Ordered, adjudged and decreed this 3d July, 1901."

On the same day an appeal was allowed to this court, and on July 4, 1901, the following certificate was signed by the trial judge and filed:

"The final decree having been entered herein on the 3d day of July, 1901, dismissing this suit and the bill, and amended and supplemental bill therein, now, therefore, this court in pursuance of the second paragraph of the fifth section of the act of Congress, approved March 3, 1891, and entitled 'An act to establish Circuit Courts of Appeal and to define and regulate in certain cases the jurisdiction of the courts of the United States, and for other purposes,' hereby certifies to the Supreme Court of the United States for decision the question of the jurisdiction alone of this court over this cause, whether this cause presents a controversy which involves a Federal question under the laws or Constitution of the United States.

"The only question which I considered and decided in dis-

missing this suit and the bills of complaint is whether a Federal question was involved upon the pleadings."

*Mr. James A. Carr* for appellant.    *Mr. S. S. Hudson* and *Mr. A. N. Edwards* were on his brief.

*Mr. L. W. Magruder* for appellees.

MR. JUSTICE SHIRAS, after making the foregoing statement, delivered the opinion of the court.

The sole question for our consideration is whether the bill, as originally filed and as amended, presented a Federal question. As the party plaintiff and the party defendant were both corporations and citizens of the same State, the Circuit Court of the United States could not take jurisdiction of the controversy between them, unless the complainant laid grounds for that jurisdiction by asserting rights arising under the Constitution or laws of the United States, and such assertion must appear in the complainant's statement of its own claim.    *Metcalf* v. *Watertown*, 128 U. S. 586; *State of Tennessee* v. *Planters' Bank*, 152 U. S. 454; *Blackburn* v. *Portland Mining Co.*, 175 U. S. 571.

It is true that the learned judge, in his certificate to this court, inquires "whether a Federal question was involved upon the *pleadings.*"   And it is also true that the counsel for the respective parties have gone, in their briefs, into a discussion of questions of fact and law, as if the case were here on appeal from a final decree on the merits.

But our function, in the case before us on this certificate, is restricted to the inquiry whether, upon the allegations of the bill of complaint, assuming them to be true in point of fact, a Federal question is disclosed so as to give the Circuit Court jurisdiction in a suit between citizens of the same State.   If we conclude, after an inspection of the bill, that a Federal question is thereby presented, we must reverse the decree of the Circuit Court below dismissing the bill, and direct that court to proceed in the orderly exercise of its jurisdiction to determine the con-

troversy; if we fail to find such a question, the decree of the Circuit Court must be affirmed.

Addressing ourselves, then, to a consideration of the contents of the bill, original and supplemental, we encounter a very long and somewhat confusing narrative of the facts of the case. We do not think it necessary to state those facts in full in this opinion, but shall confine our attention to the allegations in which questions arising under the laws or Constitution of the United States are claimed to arise.

By an act of the legislature of the State of Mississippi, approved on the 18th day of March, 1886, the city of Vicksburg was authorized " to provide for the erection and maintenance of a system of waterworks to supply said city with water, and to that end to contract with a party or parties who shall build and operate waterworks."

The city received competitive bids for the construction and maintenance of said waterworks, and on November 18, 1886, at a special meeting of the board of mayor and aldermen, a committee reported that the bid made by Samuel R. Bullock & Company, of New York was the best bid, and submitted the draft of an ordinance, entitled " An ordinance to provide for a supply of water to the city of Vicksburg, in Warren County, Mississippi, and to its inhabitants, contracting with Samuel R. Bullock & Company, their associates, successors and assigns, for a supply of water for public use, and giving the city of Vicksburg an option to purchase said works."    This ordinance was then adopted, in terms as follows :

" Sec. 1.  That in consideration of the public benefit to be derived therefrom the exclusive right and privilege is hereby granted for the period of thirty (30) years from the time that this ordinance takes effect, unto Samuel R. Bullock & Company, their associates, successors and assigns, of erecting, maintaining and operating a system of waterworks in accordance with the terms and provisions of this ordinance, and of using the streets, alleys, public squares and all other public places within the corporate limits of the city of Vicksburg, Mississippi, as they now exist or may hereafter be extended, and within such other territory as may now or hereafter be extended and within such

other territory as may now or hereafter be under its jurisdiction, for the purpose of laying pipes, mains and other conduits, and erecting hydrants and other apparatus for conducting and furnishing an adequate supply of good wholesome water to the city of Vicksburg, Mississippi, and to its inhabitants for public and private use, and for making repairs and extensions to the said system from time to time during the period in which this ordinance shall be in force.

"The said Samuel R. Bullock & Company, their associates, successors and assigns, shall exercise the greatest care and diligence in the use of the said streets, alleys, public squares and other public places, and shall cause no unnecessary obstruction of, or interruption to, the public travel over or upon the same, or any injury to or interference with any pipes, mains, sewers, which may now be lawfully located beneath the surface thereof.

"The said Samuel R. Bullock & Company, their associates, successors and assigns, shall take every precaution to provide against danger to property, life and limb by reason of the exercise of the rights and privileges hereby granted, and shall cause all excavations and obstructions to be properly lighted and guarded at night, and after the completion of the purposes for which the said streets, alleys, public squares and other public places may be used, they shall be restored to their former condition as near as may be without unnecessary delay, and they shall at their own cost and expense relay their mains and pipes when made necessary by a change of grade in any street ordered by the board of mayor and aldermen of said city if there was no established grade for such street at the time said mains and pipe were laid. On failure to restore said streets, alleys, public squares and other public places as aforesaid, the mayor and aldermen of the city of Vicksburg may, on reasonable notice to them by any city officer, cause the same to be restored and recover the costs and expenses thereof from the said Samuel R. Bullock & Co., their associates, successors and assigns, in any court having jurisdiction of the amount.

"The said Samuel R. Bullock & Company, their associates, successors and assigns, hereby agree to hold the mayor and aldermen of the city of Vicksburg harmless from any liability

which may result to it by reason of any violation of this section.

" Sec. 2. The general plan of the said system of waterworks shall be as follows :

" Mains.— The pipe system shall consist of not less than twelve (12) miles of mains of sizes varying from sixteen inches (16) to six (6) inches in diameter. The pipe used shall be of the best quality of cast iron pipe and each pipe shall be tested at its place of manufacture to a pressure of three hundred (300) pounds to the square inch. All pipe shall be coated with Dr. Angus Smith's preservative varnish, and shall be laid and jointed by competent mechanics and in the best possible manner.

" The streets along which and at what points said mains shall be laid shall be first designated by the board of mayor and aldermen of the city of Vicksburg.

" Hydrants.—The hydrants shall be double-nozzle fire hydrants with nozzles fitted to connect with the hose couplings now in use by the fire department of said city of Vicksburg.

" The board of mayor and aldermen of the city of Vicksburg shall within thirty (30) days from the date of the final passage of this ordinance designate the points on the line of distributing mains at which the hydrants shall be erected.

" Gates and valves.—All the necessary gates and valves shall be provided and located at such points on the lines of mains as will enable certain districts to be cut off and isolated when repairs are needed without depriving other districts of their full supply.

" Pumps.—The pumping plant shall consist of two pumping engines each capable of pumping two millions (2,000,000) of gallons of water per day of twenty-four (24) hours against the pressure needed to supply all parts of the pipe system with an abundant supply of water. They shall be so arranged as to be operated separately or together.

" Boilers.—The boilers shall be of ample capacity to operate the pumping engines and shall be so arranged as to be operated separately or together as may be required.

" Stand-pipe.—There shall be a stand-pipe or a reservoir of

sufficient capacity and height or elevation to furnish an ample supply of water for consumption at the highest points along the line of the mains. .

"Pump-house.—The pumps and boilers house shall be a substantial stone or brick building of ample size for the pumps and batteries of boilers. The smokestack will be of brick of the size needed to operate the boilers.

"Source of supply.—The water shall be taken from such point as may be free from all sewerage contamination, and shall be good, wholesome water fit for all purposes of domestic or manufacturing consumption.

"Sec. 3. In consideration of the public benefit and the protection to property resulting from the construction of the said system of waterworks the mayor and aldermen of the city of Vicksburg hereby rent to the said Samuel R. Bullock & Company, their associates, successors and assigns, not less than eighty (80) double-nozzle frost-proof fire hydrants for the aforesaid period of thirty (30) years at the annual rate of sixty-five ($65) dollars for each hydrant, to be payable semi-annually on the 15th days of January and July. After the first year of the operation of said waterworks the said city hereby rents not less than ten (10) hydrants in addition to said eighty (80) for the unexpired period of said thirty years; the first one hundred (100) hydrants shall be located on the original twelve (12) miles of mains at said annual rental of sixty-five ($65) dollars, payable as aforesaid and for the remainder of said period of thirty years unexpired at the time of placing each of said hydrants.

"The rental of all hydrants in excess of said one hundred hydrants hereafter erected on the line of distributing mains or on the extensions thereof as hereinafter provided at the request of the said mayor and aldermen of the city of Vicksburg shall be at the annual rate of fifty (50) dollars for each hydrant, payable as aforesaid, during the unexpired period of the said original term of thirty (30) years. Water shall be used from the said hydrants for the extinguishment of fires and necessary fire practice and for flushing sewers and gutters only, provided that for fire practice and flushing sewers no more than two hydrants shall be opened at one time and not more than once in each week.

" Sec. 4. Water shall be furnished free of charge to the public schools, and all ·other public buildings used exclusively for city purposes, and for filling public cisterns, and the city hospital shall also be supplied with water free by a supply pipe whenever the mains shall be laid within seven hundred and fifty (750) feet of said hospital.    And water shall also be supplied free for six (6) drinking fountains with openings for man and beast and one public fountain to be erected by the said Samuel R. Bullock & Co., in such place on the line of mains as the board of mayor and aldermen of the city of Vicksburg may direct.

· " Sec. 5. That said Samuel R. Bullock & Company, their associates, successors or assigns, may procure the organization of a waterworks corporation under the laws of any State and may assign to it all the rights and privileges acquired hereunder. Provided, that such assignment shall not invalidate or affect the bond required by section (7) seven hereof and no assignment thereof shall be valid unless such assignee shall in writing to said board of mayor and aldermen accept this ordinance and become bound by its terms and obligations.    And the said board of mayor and aldermen shall pass and enact such further and other ordinance and do and perform such other acts, including the repassage of this ordinance, in favor of the said corporation as may be necessary to vest in the said corporation the rights and privileges hereby granted.

" Sec. 6. Upon the completion of the construction of the said system of waterworks the said Samuel R.· Bullock & Company, their associates, successors and assigns, shall notify the mayor · and aldermen of the city of Vicksburg to that effect in writing and thereupon submit the works to such a test as will show the capacity of the works to be sufficient to throw four (4) fire streams through one hundred feet of two and one half inch hose and one-inch nozzle from four (4) different hydrants a stream not less than fifty (50) feet high at the highest location on which any of such hydrants are located.    On the satisfactory performance of this test the said board of mayor and aldermen shall formally accept said system if constructed in accordance with the terms of this ordinance.

" Sec. 7. Within fifteen days after the day that this ordinance takes effect the said Samuel R. Bullock & Company, their associates, successors or assigns, shall file their written acceptance thereof, binding themselves to its terms and obligations, in the office of the city clerk accompanied by their bond in the penal sum of ten thousand ($10,000) dollars with two or more sufficient sureties to be approved by said board of mayor and aldermen executed to the mayor and aldermen of the city of Vicksburg and conditioned for the faithful compliance with the terms of this section.   On failure to file such bond within said time this ordinance shall become null and void.   But if said board shall not approve a bond so filed, said board may in its discretion grant additional reasonable time within which to file another bond.

" The construction of the said system shall be commenced within sixty days after this ordinance takes effect, and said system shall be completed within eighteen (18) months after the commencement of the construction thereof ; provided however, that the time during which the said Samuel R. Bullock & Company, their associates, successors or assigns, are delayed by floods, act of God or the public enemy, legal proceedings for the maintenance or defence of their legal rights or in the acquisition of property or right of way, or by reason of any other causes whatever beyond their control, shall form no part of the time limited in this ordinance for the performance of any act required by the terms hereof to be done by them, but they shall use all due diligence to remove any such obstructions or delays.

" Sec. 8. The said board of mayor and aldermen of the city of Vicksburg shall from time to time pass and enact ordinances under suitable penalties providing for the protection of said works from damage, fraud or imposition.

" Sec. 9. At the expiration of each period of ten years after this ordinance takes effect, the mayor and aldermen of the city of Vicksburg shall have the right and privilege to purchase the said system of waterworks, provided they notify the said Samuel R. Bullock & Company, their associates, successors or assigns, of their intention to do so, at least one year before the expiration of the said period of ten years.

" The value of the said system shall be ascertained as follows : The said Samuel R. Bullock & Company, their successors, associates and assigns, and the board of mayor and aldermen of the city of Vicksburg shall severally appoint one person, the two appointees shall choose a third, and the three persons thus chosen, who shall be hydraulic engineers, shall constitute a board to determine the value of the said system of waterworks. None of the board shall be residents of the said Warren County. The said mayor and aldermen of the city of Vicksburg shall within sixty days after the said board have rendered its decision, pay the amount awarded in cash. A failure to so pay the award or to give notice of intention to purchase as above provided shall operate as a waiver of the right to purchase until the expiration of the next succeeding period of ten years.

" Sec. 10. The said Samuel R. Bullock & Company, their associates, successors and assigns, shall make extensions to their line of mains whenever called upon so to do by the mayor and aldermen of the city of Vicksburg. Provided, however, that said extensions shall be not less than five hundred feet in length and that one public hydrant shall be located on each five hundred feet or major portion thereof ; and further provided, that two thirds of the residents on the line of such extension shall agree to take water at the established rates for a period of at least two years, but the said Samuel R. Bullock & Company, their associates, successors and assigns, may voluntarily make such extensions from time to time as they may deem necessary.

" Sec. 11. After the works are put in operation, if at any time the pressure gauges located at the points hereinbefore named should indicate a pressure of less than twenty pounds (20) on the distributing mains at the highest point of elevation for the period of two weeks in succession then the rentals for the use and employment of the hydrants for the purposes aforesaid shall cease until the standard of pressure in this section provided shall be attained ; provided however, if the pressure indicated as aforesaid should be less than twenty pounds for two calendar months in succession then all the rights, and privileges

of the said Samuel R. Bullock & Company, their associates, successors and assigns, acquired by virtue of this ordinance shall at the option of said board of mayor and aldermen made in writing cease, determine and be null and void. · But nothing herein contained shall be so construed as to prevent the said Samuel R. Bullock & Company, their associates or assigns, from temporarily shutting off the water from its said system or any portion thereof, for the purpose of making repairs or extensions to the same; and no liability shall attach to the said Samuel R. Bullock & Company, their associates, successors and assigns, for the suspension of the supply of water; provided, the repairs or extensions are made and the water turned on again without unnecessary delay. But the city shall not be liable to pay the rental for any hydrant during such time as the proper supply of water cannot be procured therefrom.

"Sec. 12. Be it further ordained, That as part of the consideration for the performance of the duties and obligations hereby imposed on the said Bullock & Co., their associates, successors and assigns, the said waterworks and the property and business pertaining thereto and employed in and about said system shall be exempt from all municipal taxation during the first five years of their operation, and all of the property and business pertaining to and employed in and about said system of waterworks shall thereafter during each year for the balance of· the period of this contract be assessed for taxation by said city at a valuation not to exceed the sum of fifty thousand dollars ($50,000).

"Sec. 13. The said Samuel R. Bullock & Company, their associates, successors or assigns, shall have the right to make all needful rules and regulations governing the consumption of water, the tapping of pipes and general operation of the works, and to make such rates and charges for the use of said water as they may determine; provided, that said rates and charges shall not exceed fifty cents for each one thousand gallons of water.

"Sec. 14. Be it further ordained, That for the purpose of paying the obligations and liabilities of the said mayor and aldermen of the city of Vicksburg, which shall accrue to the

said Samuel R. Bullock & Company, their associates, successors or assigns, by virtue of the terms and conditions of this ordinance, the said mayor and aldermen of the city of Vicksburg or other duly constituted municipal authorities shall annually levy and cause to be collected upon the taxable property of said city a special tax, to be known and designated as the waterworks tax, sufficient to meet and pay all of said obligations and liabilities during the continuance of this contract and until all of said obligations and liabilities shall be paid and discharged.

" SEC. 15. Be it further ordained, That this ordinance shall take effect from and after its approval by the mayor. Ordained this 18th day of November, 1886."

On March 1, 1887, Samuel R. Bullock & Company assigned and transferred, under and by virtue of the fifth section of the aforesaid ordinance, all their rights and privileges acquired under the ordinance to the Vicksburg Water Supply Company, incorporated under the laws of the State of Mississippi, and the said company accepted in writing the said ordinance.

The bill further alleges the construction of the said water plant, in accordance with the specifications contained in the ordinance, and the city accepted the same ; that since the completion and acceptance of said waterworks, during a period of fourteen years up to about July, 1900, the said company fully complied with all the terms of the ordinance, and no complaint was made by the city with respect to the execution of the company's part of the contract, and the city, without question, paid to the water company the semi-annual payments stipulated for in the ordinance ; that on the 8th day of August, 1900, a mortgage that the said company had previously made, and which had fallen into default, was foreclosed, and all the franchises, ordinances, contracts and property described and conveyed in said mortgage deed were sold to the Vicksburg Waterworks Company, a corporation under the laws of the State of Mississippi, doing business in the city of Vicksburg, and which became the owner of said waterworks property and entered into the operation of the same ; that on October 18, 1900, the said The Vicksburg Water Supply Company executed a quitclaim deed to the said The Vicksburg Waterworks Company, convey-

ing and assigning all rights, titles and interest it might have or might thereafter acquire in said waterworks property, franchises, ordinances and contracts; that the Vicksburg Waterworks Company gave the city notice in writing of the said purchase and assignment, with a written acceptance of the terms and provisions of the said ordinance; that since the completion and acceptance of the said waterworks the city continuously received and used the water furnished by said waterworks, during a period of about fourteen years; and said water has at all times been and now is good and wholesome for public and private use, and adequate in supply for the needs of the city and its inhabitants; that said water so furnished from the time the city first received and accepted the same up to the present time is and has at all times been the same character and supply of water, and is and at all times. has been in accordance with the said ordinance and contract entered into with said city by said S. R. Bullock & Company, the said Vicksburg Water Supply Company, and the said Vicksburg Waterworks Company, and that the pressure maintained has at all times been and is now greater than required by said ordinance and contract.

Upon these allegations, the appellants claim that a contract was entered into between the city and S. R. Bullock & Company and their assigns, the Vicksburg Water Supply Company and the Vicksburg Waterworks Company, which contract still exists and is within the protection of the Constitution of the United States.

The matters and things which are alleged by the appellants to impair the obligation of said contract and to destroy their property rights are mainly as follows:

On March 9, 1900, the legislature of Mississippi passed an act entitled "An act to authorize the mayor and aldermen of the city of Vicksburg to issue bonds to the amount of $375,000, to purchase or construct, equip and maintain, a waterworks system; construct and establish a sewerage system; to purchase grounds for, erect and equip a city hall; construct the necessary buildings for a medical college, and for other purposes;" by which act, the bill alleges, the legislature assumed to annul and abrogate the aforesaid ordinance and contract the

city entered into with said Bullock & Company and their assigns in this, that, by reason of said ordinance and contract, said city has no right within the said period of thirty years to engage in the business of supplying water to the inhabitants of said city in competition with said Bullock & Company or their assigns, notwithstanding which said act authorizes and permits said city to construct and maintain waterworks for said purpose, if unable to buy the waterworks of said Vicksburg Water Company at the arbitrary and inadequate price fixed by the said legislative act. The bill further alleges that, in pursuance of said act, and as required by its terms and conditions, an election was held in said city on the 3d day of July, 1900, at which it was voted, by a majority of the votes cast, that said city should issue its bonds in the sum of $150,000, to buy or construct waterworks for said city; that, on the 7th day of November, 1900, the city passed a resolution and ordinance as follows: " Resolved, that the mayor be and is hereby instructed to notify the Vicksburg Waterworks Company that the mayor and aldermen deny any liability upon any contract for the use of the waterworks hydrants; that from and after August, 1900, they will pay reasonable compensation for the use of said hydrants; that the city attorney take such action as shall be necessary to determine the rights of the city in the premises." The bill further alleges that on December 7, 1900, the city filed a bill in the Chancery Court of the county of Warren, State of Mississippi, against the Vicksburg Water Supply Company and the Vicksburg Waterworks Company, averring, among other things, that the contract entered into with Samuel R. Bullock & Company was null and void, and the attempt by said mayor and aldermen was a gross abuse of their rights and powers; that the said mayor and aldermen had no right to make a contract for so long a period as thirty years, and beyond their official terms to bind the constituted authorities to pay rents for the said hydrants as therein stipulated; that the rates prescribed in said contract for the use of said hydrants and the rates charged by said company against domestic consumers are exorbitant and illegal, and said board exceeded its power and authority in making a contract stipulating during the

period aforesaid for said rates ; that the said mayor and alder-
men, at a meeting held on the 5th day of November, 1900, re-
solved and declared that " the said board no longer recognized
any liability, under said contract, to said company, by reason
whereof said complainants say that said contract no longer
exists; that they are entitled, as against the Vicksburg Water
Supply Company, to have said contract canceled and annuled,
and as against the Vicksburg Waterworks Company to a de-
cree that said company have never acquired any rights in or
to said contract, or if mistaken in this, by reason of the mat-
ters and things stated, they are entitled to have the same an-
nuled and cancelled; praying that the said city may have said
relief and such other and further relief as may appear just
and proper."

The present bill further alleges that said suit in the chancery
court was brought on petition to the Circuit Court as involving
a Federal question, and that the same is now pending in that
court upon a motion to remand.

The bill prays for an injunction to restrain the defendant
from assuming to abrogate and take away the franchises and
contract rights of the complainant, and from attempting to coerce
the company to sell its works to the defendant for an inadequate
price, and that said act of the legislature of Mississippi, adopted
on March 9, 1900, and said resolution and ordinance adopted
and passed by said city on the 7th day of November, 1900, be
declared to impair the obligations of said contract between said
city and said Bullock & Company and their assigns, and to cast
a cloud upon the title, franchises and rights of complainant, and
said act, ordinance and resolution, and each of them, are alleged
to be in contravention of the Constitution of the United States
in this, that they impair the obligations of said contract be-
tween said city and said Bullock & Company and their assigns.

It cannot be seriously contended that, under the act of
March 18, 1886, authorizing the city to provide for the erection
and maintenance of a system of waterworks, and to contract
with a party or parties to build and operate waterworks, and
under the ordinance of the city of November 18, 1896, provid-
ing for a supply of water to the city and its inhabitants by con-

tracting with Samuel R. Bullock & Company, their associates, successors and assigns, and the acceptance of said ordinance by Samuel R. Bullock & Company, no contract was entered into. The subject-matter of the contract was within the powers of the city to make; the terms were explicitly set forth in the ordinance; the works erected were approved by the city, and the respective obligations created by the contract were duly complied with without question or complaint, for a period of fourteen years.

After the lapse of that long period and the continuous acquiescence of the city in the contract as a valid and subsisting one, the city, according to the allegations of the bill, now insists that the said contract was invalid because in excess of its powers to contract, and is proposing to borrow money to erect and maintain waterworks of its own, and become a competitor with the complainant for the custom of the consumers of water. And the question for our consideration is whether the subsequent legislation, state and municipal, set forth in the bill, impairs the contract rights of the complainant within the protection of the Constitution of the United States.

As respects the act of March 9, 1900, it is contended by the complainant that it is unconstitutional for several reasons, chiefly because it places an arbitrary valuation on the property of the complainant, and because it purports to authorize the city to build and operate waterworks of its own in derogation of the contract rights of the complainant.

Whether this act of the legislature of Mississippi is, in its terms, subject to those objections, or whether it may be regarded as merely authorizing the city to proceed in such a manner as not to conflict with existing contract obligations, we need not determine at this stage of the case, because we think that the ordinance of the city of November 7, 1900, whereby the mayor was instructed to notify the waterworks company that the mayor and aldermen deny any liability upon any contract for the use of the waterworks hydrants, and the subsequent action of the city in holding an election to authorize the issue of bonds to buy or construct waterworks of its own, and in refusing to pay the amount due and payable under the terms of the ordi-

nance, do not present the mere case of a breach of a private contract to be remedied by an action at law, but disclose an intention and attempt, by subsequent legislation of the city, to deprive the complainant of its rights under an existing contract; and that, therefore, unless the city can point to some inherent want of legal validity in the contract, or to some such disregard by the waterworks company of its obligations under the contract as to warrant the city in declaring itself absolved from the contract, the case presented by the bill is within the meaning of the Constitution of the United States and within the jurisdiction of the Circuit Court as presenting a Federal question.

The objections urged in the brief of the appellee to the validity of the contract, because it undertakes to bind the city for a period of thirty years, because an attempt to barter away the legislative power of the city authorities, and because creating an indebtedness in excess of the charter limits, are those that were considered at length in the similar cases of *Walla Walla* v. *Walla Walla Water Company*, 172 U. S. 1, and *Los Angeles* v. *Los Angeles City Water Company*, 177 U. S. 558, and were in those cases held to be untenable. However, we do not wish to be understood as now determining such questions in the present case, for we are only considering whether or not the Circuit Court had jurisdiction to consider them.

It is further contended that the bill does not disclose any actual proceeding on the part of the city to displace complainant's rights under the contract, that mere apprehension that illegal action may be taken by the city cannot be the basis of enjoining such action, and that therefore the Circuit Court did right in dismissing the bill. We cannot accede to this contention. It is one often made in cases where bills in equity are filed to prevent anticipated and threatened action. But it is one of the most valuable features of equity jurisdiction, to anticipate and prevent a threatened injury, where the damages would be insufficient or irreparable. The exercise of such jurisdiction is for the benefit of both parties; in disclosing to the defendant that he is proceeding without warrant of law, and in protecting the complainant from injuries which, if inflicted, would be wholly destructive of his rights.

It may be said that the action of the Circuit Court in dismissing the bill may have been based on the fact that the city had proceeded by a bill filed in the Chancery Court of Mississippi against the waterworks company before the present suit was instituted. But the learned judge does not, in his certificate, suggest such a question, and the bill avers that the record in the city's suit is still pending in the Circuit Court on a motion to remand. Whether the city's complaint in the state court disclosed a Federal question, and what, if properly removed to the Circuit Court for that reason, the course of the Circuit Court ought to be in respect to the formal disposition of the cases, are matters not before us for determination.

Nor can we consider allegations made in behalf of the city in its answer as to misconduct of the waterworks company, in respect to which no issue was found nor proofs taken in the court below. They must be determined by the proper tribunals, which will pass upon the merits of the case.

We think this cause presents a controversy so arising under the laws and Constitution of the United States as to give the Circuit Court jurisdiction, and therefore the judgment of the Circuit Court is

*Reversed, and the cause remanded to that court to take proceedings therein according to law.*