## HARVEY v. MILLER.

EQUITY; TITLE BY ADVERSE POSSESSION; INJUNCTION AGAINST TRESPASS.

1. One who has the record title to real estate cannot maintain a bill in equity under § 111, D. C. Code, as that statute contemplates and provides only for the establishment of a title by adverse possession as a good record title, and not the declaration by a court of equity that the owner of the record title, who is also in possession, is entitled to the property by adverse possession as well as by the record title.

2. A bill in equity by a landowner against the owner of adjacent land to enjoin the latter from erecting a fence on complainant's land, the controversy between the parties resulting from two different surveys of the complainant's and defendant's tracts, is not maintainable where the boundary line, according to the complainant's own showing, is defined and well ascertained, the threatened trespass not involving an irreparable injury, and being cognizable at law.

No. 1394.   Submitted May 6, 1904.   Decided May 24, 1904.

HEARING on an appeal by the complainant from a decree of the Supreme Court of the District of Columbia dismissing a bill for the establishment of a title to real estate, and for an injunction.                                        *Affirmed.*

The COURT in the opinion stated the case as follows:

The appellants, James S. Harvey and Benedict F. Harvey,

trustees, as complainants, claiming to be the owners in fee
simple under a record title of the western part of lot 11, in
square 516, in this city, fronting 17 feet and 10 inches on I
street, which title they deduce from an ancestor who purchased
the same in the year 1866, and claiming to be and to have been
in possession thereof, filed their bill in equity in the supreme
court of the district to restrain the appellee, George H. Miller,
who is alleged to be the owner of the adjoining eastern part of
the same lot, fronting 22 feet on I street, from maintaining a
fence which had formerly stood between the two pieces of prop-
erty, and which the defendant had caused, in the absence of the
complainants, and under pretense of some new survey that had
been made, to be moved back from 1 to 2 feet upon the property
previously within the inclosure of the complainants; and also
to fix the lines of the property of the complainants.

This bill was filed on September 21, 1901, and a demurrer
was interposed to it.    But there was no disposition of the de-
murrer, and no further action of any kind, so far as the record
before us discloses, seems to have been taken until February 11,
1903, when the demurrer was sustained, with leave to the com-
plainants to file an amended and supplemental bill.    The
amended and supplemental bill was filed, and it made a some-
what different case for the complainants; for in it they alleged
that on February 25, 1903, the same day on which the amended
and supplemental bill was filed, they removed the fence that had
been erected by the defendant; but whether it was put back in
its original place, or whether the two pieces of property were
left without any dividing fence, does not appear.    The bill is
very vague in regard to it.    This amended and supplemental
bill also alleged that the complainants had been long in adverse
possession of the property; that the defendant threatened to en-
croach upon the complainants' land and to erect another fence
thereon, to their great and irreparable loss by the narrowing of
the passageway between the two houses on the several lots which
they had hitherto enjoyed; and all this "under some alleged
recent survey of the property in question," which is not more
distinctly stated.    And the prayer of this amended and supple-

mental bill is for an injunction against the defendant to prevent him from narrowing the passageway and from reconstructing the fence according to his claim, and that the complainants may be decreed to have a good and absolute title by adverse possession, as well as by record, to all the property embraced within the lines called for by the deed to their ancestor.

To this amended and supplemental bill, also, a demurrer was interposed, and the demurrer was sustained, and, as the complainants declined to amend, the bill of complaint was dismissed. From the decree of dismissal the present appeal has been prosecuted.

*Mr. Wilton J. Lambert* and *Mr. D. W. Baker* for the appellants.

*Mr. Walter C. Clephane* and *Mr. Alan O. Clephane* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

It is difficult to see upon what head of equity jurisprudence this proceeding can be sustained. Certainly it cannot be sustained under § 111 of the Code, which reduces to the form of a statute the rule of equity stated by the Supreme Court of the United States in the case of *Sharon* v. *Tucker,* 144 U. S. 533, 36 L. ed. 532, 12 Sup. Ct. Rep. 720, for the conversion of a title by adverse possession into a record title; for the complainants already have the legal record title, as they claim, and as the demurrer admits, and equity will not do the useless thing of decreeing it to them again. The statute contemplates the establishment of a title by adverse possession as a good record title, and not the useless and superfluous declaration that the owner of the record title, who had also been in possession, is entitled to the property by adverse possession as well as by his record title. This is not the meaning of the term "adverse possession" as used in the law.

Then, if the matter of adverse possession is eliminated from

the case, as it must be, all that remains in the case is an attempt through the instrumentality of a court of equity to restrain the commission of a trespass. But the trespass is one cognizable at common law, and in an aggravated form cognizable in the criminal court or in the police court. We are far from denying that there are or may be cases in which a court of equity would use its injunctive process to restrain a threatened trespass; but they must be cases involving irreparable loss or injury, and in which the courts of the common law are unable to afford adequate relief. *Vicksburg Waterworks Co.* v. *Vicksburg,* 185 U. S. 65, 46 L. ed. 808, 22 Sup. Ct. Rep. 585; *Amelung* v. *Seekamp,* 9 Gill & J. 468, *Kilgannon* v. *Jenkinson,* 51 Mich. 241, 16 N. W. 390.

The case here is one of common trespass, which may well be remedied either by a suit at common law for the purpose,—at the utmost, by an action in ejectment. There is no showing of irreparable injury. There is no ground for the intervention of a court of equity. Neither is there any confusion of boundary that would call for equitable interference. The boundary line of the land of the complainants, according to their own showing, is definite and well ascertained, and can readily be located by any surveyor. Through the vague and misty statements of the two several bills of complaint, it is quite apparent that the whole difficulty which has given rise to these proceedings is the result of two different surveys of the property in question, varying in their conclusions from each other. But even if these variations could afford ground for the intervention of a court of equity, the vagueness of the allegations in regard to them would preclude the case from being entertained by the court. There is need of more definite statement to enable a court of equity to act intelligently in the premises.

We are of opinion that the court below did not err in its ruling, and that the decree appealed from should be affirmed, with costs. And it is so ordered. *Affirmed.*