**FEMMER v. CITY OF JUNEAU, et al.**

No. 3770-A.

District Court of Alaska. First Division. Juneau.

July 10, 1937.

James Wickersham, of Juneau, for plaintiffs.
Faulkner & Banfield, of Juneau, for defendants.

ALEXANDER, District Judge.

This is a suit brought by the plaintiff, D. B. Femmer, as a taxpayer of the City of Juneau, against the defendants above named, seeking to have a contract,—heretofore entered into by and between the City of Juneau, through its Mayor and City Council with the Northland Transportation Company on April 26th, 1935,—declared ultra vires and void, and to restrain the City of Juneau from the operation of the city dock mentioned in said contract, and to enjoin the city from expending any monies from the general fund of said city raised by general taxation for the maintenance and operation of said city dock, on the grounds that the contract in question is exclusive and monopolistic in its nature and discriminates against others who may desire to use said dock; that no rules, regulations, rates or charges for the conduct and operation thereof have ever been promulgated or estab-

lished by said city, nor notice or publicity thereof given; and that said city is conducting and operating and maintaining the same out of funds raised by general taxation and not from revenues derived or collected for services rendered by said city dock or obtained from the use or enjoyment thereof.

The City by its answer admits that plaintiff is a taxpayer; that it is a municipal corporation as alleged and that its officers are as alleged; admits the execution of the contract in question and that pursuant thereto it entered upon, and ever since has continued, the operation of said city dock as a public utility and employed a wharfinger and other necessary employees, and that certain sums of money were expended by the City from the general fund of the City for the rehabilitation of said dock and putting it in a condition for use, but denies specifically that any monies from the general fund of said City have been used for the maintenance and operation of said dock since the filing of plaintiff's second amended complaint, but that same has been maintained and operated wholly from the revenues collected for service rendered, and specifically denies all of the other allegations of plaintiff's complaint.

Chapter 48 of the Session Laws of 1935, which amends Section 2383 of the Compiled Laws of Alaska 1933, authorizes municipalities in Alaska, "To purchase, construct, or otherwise acquire, establish, and operate public wharves * * * for * * * the residents of the city and the public. * * * Provided, however, such public utilities as are provided for in this sub-section shall not be operated or maintained by funds raised by taxation but from the revenue collected for service rendered by such plants or utilities from the customers or users thereof."

This law was in effect at the time the contract was entered into.

The contract in question was made pursuant to a resolution of the City Council of Juneau, wherein it is recited substantially that the City was the owner of certain city wharf or dock property which had not been used for nearly one year and was now greatly deteriorated and in need of repairs; and that in the opinion of the Council said city dock property should be put to some use in order to defray as far as possible the cost of its upkeep and in order that the residents of Juneau may obtain the advantages and benefits intended for them when the city dock was constructed, which advantages and benefits can only be obtained through using said dock and wharf property.

The agreement, after setting forth that the City is the owner of a certain dock or wharf and warehouses constructed and situated thereon, and that the Northland Transportation Company, operating steamships between the port of Seattle, Washington and Juneau, Alaska, and other ports in Southeastern Alaska, is desirous of making arrangements to use said property as a place to land its vessels, discharge its freight and passengers, load freight and baggage, mail and express, and embark passengers, etc., at Juneau; and the City of Juneau having no present use for said dock property, and being desirous of putting the same to use as a public dock or wharf and to use it for the purposes for which it was intended, then provides that the party of the second part (Northland Transportation Company) is granted the privilege of landing all of its vessels arriving at the port of Juneau, Alaska, at said wharf for the period of five years, on the terms provided in said contract, and that said transportation company shall have a priority in the right to land its vessels at said city dock and to use the same for the purposes aforesaid, provided a reasonable notice (fixed at six hours) be given the City prior to the arrival of any such vessel.

The City on its part agrees to put said premises in a condition to operate, and to operate the same as provided in said contract.

The City, however, reserves the right to dock and serve other vessels than those of second party, subject to the prior rights of second party; and reserves the right to sell or lease said property or to cancel this agreement upon the terms sets forth in said agreement.

There are other provisions in the contract, of doubtful legality, but not pertinent to the issues here, in return for which the Northland Transportation Company guarantees to the City a certain revenue from said dock.

From the proof adduced the Court finds, that the dock property in question has been owned by the city for many years and that it was a valuable asset when put to use but that it had been idle for about a year. That in order to put it in condition for use it was necessary for the city to spend quite a sum of money for that purpose, and that the funds so expended came from the general fund of the city. The evidence, however, also shows that the funds spent for the rehabilitation of said dock had all been expended and the work thereon done prior to the filing of the plaintiff's second amended complaint.

The Court further finds that since the filing of said second amended complaint said dock property has paid its own way; in other words, the revenues collected for services rendered by said dock have exceeded the costs of operation and maintenance. It however appears that the City deposited the earnings of said dock in the general fund of the city and drew from the general funds, as necessary, the funds wherewith to pay for its operation and maintenance. This practice, while probably not illegal, is bad bookkeeping on the part of the City, to say the least, as the earnings of the city dock should be segregated and kept in a separate account and the costs of operation and maintenance paid therefrom.

The proof on behalf of the plaintiff fails to show that the contract in question is exclusive and monopolistic as claimed by him, or that it unlawfully discriminates against others who may desire to use said dock. On the other hand the proof is conclusive that all necessary rules, regulations, rates and charges for the conduct and operation of said dock have been promulgated and established by the city, and that same are kept accessible to the public both at the city hall and at said city dock. It might have been better policy on the part of the City if the rules, regulations and rates governing the operation of said dock had been kept or posted in more conspicuous places than shown by the testimony, but the evidence shows that they were readily accessible to anyone who inquired or was interested, and to all on the same terms. Nor do I believe that the giving of such a preference to the Northland Transportation Company, as may be given it under the terms of the contract in question, is such as to render the contract ultra vires and void. In fact, I am inclined to agree with the officers and counsel for the city, to the effect that some such arrangement as that entered into is the only way that the city's dock property could be made self-sustaining, and while it may be argued with some merit that the Northland Transportation Company is given some preference under the terms of said contract, the proof conclusively shows that the property is available for the use of all desiring to use it, and on the same terms, and that it is, and has been at all times, so used by other parties and that no complaint has been made on that account by anyone seeking its use.

The question was several times asked in the argument as to what other prospective users would do when a Northland Transportation boat was using the dock, as the evidence showed its boats would occupy practically the entire face of the dock when berthed there, and that there would be no room for other boats to simultaneously use said dock, but such a question suggests its own answer.

They would simply have to await their turn, as the City could scarcely be expected to provide enough dockage space to take care of all the ships that may wish to land at one time.

■ The law is fundamental that a municipal corporation has only such powers as are expressly granted, or are necessary or fairly implied from those granted, or are essential to the declared objects or purposes of the incorporation, and that any doubt as to the existence of a power in a municipal corporation will be resolved against it. This is the rule laid down by the Supreme Court of the United States in an early day, and has since been universally followed by the courts of this country. This rule, however, has not been interpreted in the ironclad way contended for by the plaintiff in the instant case.

■■ The law applicable here has been clearly expressed in McQuillan, in his excellent work on Municipal Corporations, vol. 3, § 1167, as follows:

"Power to Make Contracts:

"Power of a muncipal corporation to contract, like the exercise of all other corporate powers, will depend largely upon its charter and the general laws applicable. Ordinarily the local corporation is permitted to enter into all contracts which are proper and reasonably necessary to enable it to perform the functions expressly conferred, and those which are necessarily implied from the powers conferred, and such as are essential to enable it to fulfill the duties of a local governmental organization for the benefit of the inhabitants of the locality.

· "The power to make contracts may result (a) from the inherent power of a municipality to perform indispensible acts, (b) from express words in a statute or the charter, or (c) from what is implied as incident to the powers expressly conferred on the municipality by a statute or the charter.

"The charter and statutes applicable should first be consulted to ascertain whether there are any express provisions in regard to the right to contract and if the authority is found it is of course unnecessary to consider whether any implied power exists.

"The corporation having authority to do an act, has, in respect to it, the power to make all contracts that natural persons could make. To illustrate; while express power is generally conferred on municipalities to contract for a water supply, it has often been held that such power will be implied from the express power to provide for 'the health and welfare of the city,' or from like power, and the municipality may contract therefor, although not expressly authorized so to do. The same rule applies to contracts for lighting the streets, etc. and hence no express provision is necessary to authorize the municipality to make a contract therefor."

And we might stop here to observe that the City of Juneau (like most Alaska towns of any importance) is a seaport town, and that the matter of furnishing proper and adequate facilities for the landing of vessels at their docks is one of the most important public functions the city administrations of the Territory have to perform, and one of those most vital to the maintenance and growth of the town. With these considerations in mind we believe that it was undoubtedly the intention of the legislature, when it passed the act heretofore referred to, authorizing municipalities in Alaska "to purchase, construct, or otherwise acquire, establish and operate public wharves, etc. for the use of the city and public," to confer on the towns of the Territory all the powers necessary to enable them so do to, under the express powers so granted and those necessarily implied from the grant so conferred.

The power being granted, the municipal corporation has the power to exercise such power in any reasonable way it sees fit.

"In such cases rules of strict construction do not apply when the power conferred, in its exercise, concerns only the corporation and can injure no one. The possession of the power being established, a generous measure of its exercise will be permitted to the end that it may effectuate its purpose.

"The rule of strict construction does not apply to the mode adopted by the corporation to carry into effect powers expressly or plainly granted. In determining whether or not it is properly exercising a granted power the presumption is in favor of the corporation, and to enjoin it from so doing it must be made clearly to appear that it is abusing its discretion where the mode is not limited or prescribed by the legislature." 43 Corpus Juris, § 193, p. 197, and notes 9 and 10.

As was said by the Supreme Court of Florida in State ex rel. Ellis v. Tampa Water Works: "Unless expressly or impliedly restrained by statute, a municipal corporation has a discretion in the choice of means and methods for exercising the powers given to it for governmental or public purposes, and the usual limitations upon the actions of municipalities within their legal powers are good faith and reasonableness, not wisdom or perfection." State ex rel. Ellis v. Tampa Water Works, 56 Fla. 858, 47 So. 358, 360, 22 L.R.A., N.S., 680. See, also, Freeport Water Co. v. Freeport, 180 U.S. 587, 21 S.Ct. 493, 45 L.Ed. 679; Los Angeles v. Los Angeles City Water Co., 177 U.S. 558, 20 S.Ct. 736, 44 L.Ed. 886; Vicksburg Waterworks Co. v. Vicksburg, 185 U.S. 65, 22 S.Ct. 585, 46 L.Ed. 808.

This subject is further elaborated upon by McQuillan in his excellent work on Municipal Corporations as follows:

"As it is a well-established principle that a municipal corporation may exercise such powers as are reasonably proper to give effect to powers expressly granted, the doctrine stated in the last section does not confine the con-

struction of the powers to the strict word and letter, but whatever is necessary and proper to carry into execution the granted powers, or the powers recognized as belonging to the municipal corporation, has always been conceded by the strict constructionists. The construction should not be so strict and literal as to defeat the whole machinery of municipal regulation. The strictness, then, to be observed in giving construction to municipal charters should be such as to carry into effect every power clearly intended to be conferred on the municipality, and every power necessarily implied in order to a complete exercise of the powers granted.

"In speaking for the Supreme Court of Michigan, Cooley J. observed [Port Huron v. McCall, 46 Mich. 565, 574, 10 N.W. 23, 26]: 'There is a principle of law that municipal powers are to be strictly interpreted; and it is a just and wise rule. Municipalities are to take nothing from the general sovereignty except what is expressly granted. But when a power is conferred which in its exercise concerns only the municipality, and can wrong or injure no one, there is not the slightest reason for any strict or literal interpretation with a view of narrowing its construction. If the parties concerned have adopted a particular construction not manifestly erroneous, and which wrongs no one and the state is in no manner concerned, the construction ought to stand. That is good sense, and it is the application of correct principles in municipal affairs.'

"While a corporation can do no act for which authority is not expressly given, or may not be reasonably inferred, if we were to say, to employ the language of the Connecticut court [Bridgeport v. Housatonuc R. R. Co., 15 Conn. 475, 501] 'that they can do nothing for which a warrant could not be found in the language of their charters, we should deny them in some cases the power of self-preservation as well as many of the means which are necessary to effect the essential object of incorpora-

tion; and therefore it has long been an established' principle in the law of corporations that they may exercise all the powers within the fair intent and purpose of their creation, which are reasonably proper to give effect to powers expressly granted. In doing this they must have a choice of means adapted to ends and are not to be confined in any one mode of operation.'" McQuillan on Municipal Corporations, vol. 1, § 354, p. 788.

This brings us to the question of the right of a taxpayer to bring a suit of this character.

 It is contended by the defendant that the plaintiff had no right to bring the suit as a taxpayer unless he could show that he personally had suffered some loss or inconvenience as a result of the contract of which he complains. That,, however, is not the law, but since I am deciding this case on other matters it is unnecessary to go into that question further.

I have gone into this case at considerable length, with the feeling that the actions of the City in this matter should be sustained as a matter of public policy, if not positively illegal, and it is my judgment they are not illegal.

The Court therefore holds:

That the contract in question, made by the City with the Northland Transportation Company, was a valid exercise of the powers of the city expressly conferred upon it by the Territorial Legislature, under Section 2383, Compiled Laws of Alaska 1933, as amended by Chapter 48 of the Laws of Alaska 1935;

 That under such law the City had the right to purchase, construct or otherwise acquire or establish a public wharf, or "city dock" as called here, and to expend such funds as were necessary for that purpose from the general funds of the City (although the proof shows that no funds had been so expended since the institution of this suit), and that under the same Act the City had

the authority necessary to maintain and operate said city dock for the use of the City and public, provided it did so from the revenue collected for services rendered by such utility from the customers or users thereof, as the evidence here shows.

It therefore follows that plaintiff's prayer for an injunction will be denied; but in view of the fact that plaintiff had the right to bring the suit in question, and under the proof also had probable cause to believe that the City was illegally expending money from the general fund of the City for the maintenance and operation of said dock, each party will be required to pay its own costs,—and plaintiff's suit dismissed.

Findings and Judgment may be prepared accordingly.