MISSOURI & K. I. RY. CO. v. CITY OF OLATHE.

(Circuit Court, D. Kansas, First Division. October 26, 1907.)

No. 8,605.

1. STREET RAILROADS—ORDINANCE GRANTING FRANCHISE—POWER TO REPEAL.
   A reservation in an ordinance granting a franchise to a street railroad company, which by its acceptance by the company created a contract, of the power by its to repeal said ordinance in case of a breach of its conditions by the company, does not authorize the city to repeal the ordinances at its pleasure without assigning any breach, and when there has, in fact, been none.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Street Railroads, § 50.]

2. COURTS—JURISDICTION OF FEDERAL COURTS—FEDERAL QUESTION.
   A suit to restrain the passage of a municipal ordinance repealing a prior ordinance granting a franchise to a street railroad company, which had been accepted by the company, is one involving the question of the impairment of the obligation of a contract in violation of the constitu-

tional rights of the company, and is within the jurisdiction of a federal court, regardless of the citizenship of the parties.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 821.

Jurisdiction in cases involving federal question, see notes to 11 C. C. A. 308; 35 C. C. A. 7.]

**8.** CONSTITUTIONAL LAW—JUDICIAL POWERS—CONTROLLING LEGISLATIVE ACTION OF MUNICIPALITY.

While a court of equity of the United States may properly enjoin the enforcement of a municipal ordinance which impairs the obligation of a contract in violation of the federal constitution, it has no power to enjoin the passage of such an ordinance, which involves the exercise of legislative discretion.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 10, Constitutional Law, § 129.]

In Equity. On demurrer to bill.

Frank Doster, S. D. Scott, and S. T. Seaton, for complainant.
C. L. Randall, J. P. Hindman, and J. W. Parker, for defendant.

POLLOCK, District Judge. The facts material to a ruling on the demurrer lodged against the bill of complaint in this case are, as shown by the record, as follows:

By an ordinance of defendant city, duly passed and published on the 1st day of February, 1907, complainant was granted the right and authority to construct and operate along and over certain streets and avenues of defendant city a standard-gauge electric interurban railway for a period of 20 years, under certain terms, conditions, and restrictions set forth in said ordinance. A copy of said ordinance reads as follows:

"An ordinance granting to the Missouri-Kansas Interurban Railway Company the right to construct, maintain and operate a railway, to be operated by electricity or any other suitable motor power except steam, over and along certain streets within the city of Olathe.

"Be it ordained by the mayor and councilmen of the city of Olathe, Kansas:

"Section 1. The right, privilege, and authority is hereby granted to the Missouri and Kansas Interurban Railway Company, a railroad corporation duly organized under the laws of the state of Kansas, hereinafter called the grantee, its successors and assigns, to construct, maintain and operate for a term of twenty years from and after the publication of this ordinance, a standard-gauge interurban railroad to be operated by electricity or other motor power except steam in, over and along certain streets and avenues of the city of Olathe, Kansas, to wit: Beginning at or near the point where the center line of the track of the Missouri and Kansas Interurban Railway Company is now located and constructed, would if extended intersect the center line of Park street in the city of Olathe, thence extending in a westerly direction over and along said Park street to the westerly side of the public square, thence in a northerly direction over and along Kansas avenue to Santa Fé avenue, thence over and along Santa Fé avenue in an easterly and westerly direction from the center line of said Kansas avenue such distance, which shall not exceed three hundred and fifty (350) feet or thereabout, as may be necessary for the proper construction and operation of a Y track which may be installed and constructed at the corner of said Kansas avenue and Santa Fé avenue.

"Said railroad to consist of a single track laid as nearly as may be in the center of the street occupied by it with necessary turnouts, Ys, passing tracks, fixtures and appurtenances needful in the construction and operation of said railway, and the grantee shall have the right to construct for the purpose of transmitting power to the propulsion of its cars, overhead trolley systems,

156 F.—40

suspended on posts placed along the curb line of such streets in said city, provided that this grant shall be subject to all the restrictions and regulations hereinafter contained.

"Sec. 2. The rights herein granted shall relate to a railroad to be operated by electricity or other motive power except steam; steam as a motive power being hereby expressly prohibited under the terms of this ordinance.

"Sec. 3. Said grantee by its acceptance of this ordinance agrees to construct, operate and maintain an interurban railway system upon and along the streets and avenues of said city of Olathe designated in section 1, of this ordinance, and to some point connecting with the street railway system of Kansas City, Missouri, and to provide the necessary cars for carrying passengers and freight and shall maintain in continuous service a schedule for the passage of cars in each direction between points within said city of Olathe at least every two hours for not less than twelve hours in each day, and at least every hour for not less than twelve hours in each day thereafter, and such additional cars for such additional hours as the public service may at any time reasonably demand. It is expressly stipulated, agreed and understood that the grantee shall not haul live stock on its railroad within the city limits and that the carriage of all freight or express within or into said city shall be subject to such regulations as the mayor and council may by ordinance prescribe.

"Sec. 4. The grantee shall bring the streets on which their tracks are laid to the grade as now or hereafter established by said city at their own expense, and for the whole width thereof, and shall also grade all intersecting streets and alleys the whole width thereof and to such distance and in such manner as will permit easy and convenient approach to the street occupied by the grantee's tracks, and the surface of said railway company's tracks shall conform to the grades now, or hereafter established.

"Sec. 5. Whenever the line of said railway company's tracks traverse any street upon which pavement is constructed it shall be the duty of said company after laying its tracks to restore such pavement wherever injured or destroyed, taken up or removed to its previous condition, and whenever the said city of Olathe shall hereafter pave, repave or repair any street upon which said line of railway is constructed it shall be the duty of such railway company to construct or pay the cost of construction of such paving, repaving or repairing to a total width in area along the street so occupied of eight feet for each track occupying each street, according to specifications adopted by said city council and to maintain such paving in good condition during the time such track may remain on such street, except when the duty of maintenance of such pavement may rest upon any contractor contracting such pavement; provided that the said railway company may construct along its tracks detachable curbs or blocks or bricks of sufficient width to enable said company to take up or repair its tracks or rails without disturbing pavement of cement or asphaltic character used in any such streets.

"Sec. 6. Upon the final determination of the city council to pave any street occupied by the track or tracks of the grantee, it shall cause the city clerk to give a written notice of such determination to said railway company and said railway company shall, if it desires to construct so much of said pavement as it is required to do under the provisions of its ordinance so notify the city clerk in writing before the contract for the construction of such pavement is awarded, and it shall thereupon be the duty of said railway company upon making such election to execute its part of such paving in conjunction with the progress of same work under the direction of the city. In the event of said railway company failing to proceed with the work if such notice is given, the said work shall be executed by the city and be charged to said railway company, and a measure of the liability of said railway company shall be the cost and expense of construction of that portion of the paving hereby made the duty of said company to construct.

"Sec. 7. It shall be the duty of the grantee at its own expense to lower, relay and reconstruct all water and gas mains, sewer man-holes and all pipes, wires and cables laid in any street when such lowering, relaying or reconstruction is made necessary by the grading of any street in the construction, operation or maintenance of said railway.

"Sec. 8. The mayor and councilmen of said city shall at all times have the power to pass ordinances regulating the use of headlights and gongs and make all other needful rules and regulations for the protection of the inhabitants of said city in connection with the operation of said railway. Fire engines or other fire fighting apparatus of the city of Olathe shall at all times have the right of way over, across and along the tracks of said railway and the cars of such railway company shall be stopped after the sounding of the fire alarm and on the approach of a fire engine, hose cart or other fire apparatus, which stoppage shall be made when such apparatus is within a distance of three hundred feet of such cars, and shall remain standing until the same have passed. All cars shall be equipped with gongs or whistles, which shall be sounded for a warning upon the approach of a street crossing and whenever necessary to warn any person of danger. All motor cars shall be provided with headlights when run after night. The grantee shall operate its cars at a speed not greater than ten miles an hour in the business portion of the city, and at a speed not to exceed fifteen miles per hour in the residence portion thereof except in front of the property of the deaf and dumb institute where the speed shall not exceed six miles per hour. All passenger cars or trains shall stop at or near all street intersections, but not on the same for the purpose of taking on or letting off passengers, and at such other places as the mayor and council may from time to time designate. The said grantee shall erect, keep and maintain at its own expense suitable and proper electric or natural gas lights at the street intersections along the line of its road within said city of Olathe and at such points within said city as may be necessary to keep its tracks lighted during the hours of the night when its cars are being operated. The entire system of tracks, trolleys, wires and equipment of said railway system shall be modern, first class and suitable for the purpose for which it is intended and shall be so kept and maintained during the existence of this franchise.

"Sec. 9. The location of the tracks, turnouts, Ys, passing tracks and power house and all poles and wires shall be subject to the approval of the city council. All wires suspended from trolley poles shall be not less than eighteen feet above the surface of the street and all the work and improvements of the said railway company of said city shall be constructed under the supervision of the mayor and in city council, so as to avoid the interference both in construction and maintenance with a free and unrestricted use of the streets by the public consistent with the construction and maintenance of said railway. Before doing any work of construction in said city of Olathe, the grantee shall file with the city clerk plans and specifications of said work to be approved by the city council.

"Sec. 10. The grantee shall construct and maintain its own bridge or viaduct across Mill creek in such manner as not to interfere with unobstructed use by the public of the wagon bridge across said creek.

"Sec. 11. The charge for transporting passengers by said railway company shall not exceed the sum of five cents for one continuous passage over said company's line from points within the city limits to any other point in such city. Tickets for the use of school children shall be furnished good for one continuous passage in quantities not less than twenty rides at the rate of two and one-half cents each, good during the school months. United States mail carriers, policemen and members of the fire department when uniformed shall be carried free within the city limits. Children under seven years of age when accompanied by any person paying full fare shall be carried free within the city limits.

"Sec. 12. The city of Olathe or any corporation or person duly authorized by it shall have the right to construct, repair, or replace water, gas and sewer mains and laterals, gas and water service pipes, conduits, to lay wires and cables or any other service utility over or under the tracks of the grantee.

"Sec. 13. The grantee shall within thirty days after the passage of this ordinance file its acceptance of the same in the form of a resolution of its board of directors, attested by the corporate seal and before entering upon any of the work hereby authorized, the said grantee shall execute to the city of Olathe, Kansas, a bond for ten thousand dollars with good and sufficient sureties to be approved by the city council conditioned that the said

grantee in the construction or repair of said road will fill all openings and excavations made by it and will replace or repair all pavings, sidewalks, curbing, streets, which may be disturbed by them in the construction of any work under this ordinance, and that they will pay all damages to persons or property for which the city may in any way become liable resulting from or growing out of any negligence or want of care on the part of said grantee in the construction or operation of its road or cars, and will pay the city the cost of and construction, repair, or other thing which is required of grantee by the terms of this ordinance and in the performance of which said grantee shall fail.

"Sec. 14. The rights and privileges granted by this ordinance shall be enjoyed and possessed by said grantee, its successors or assigns for the period of twenty years from and after the publication of this ordinance.

"Sec. 15. Whenever the city council shall deem the bond provided for in section 13 of this ordinance to be inadequate or insufficient, either in security or amount, it may require the grantee to give an additional undertaking of like tenor and effect to be approved by the city council. Before any successor or assignee or the grantee shall acquire any rights under this ordinance the bond required by section thirteen of this ordinance, shall be given or renewed by such successor or assign. This ordinance shall not be construed as granting the said grantee any exclusive right or privilege or as preventing the granting of a similar privilege to any other person, company or corporation, which shall include the right of crossing the tracks of any subsequent grantee.

"Sec. 16. All rights and privileges herein granted, and all the conditions, forfeitures and prohibitions herein contained shall be binding upon said grantee in any and all extensions of said railway in the city of Olathe, and, provided: that no extension of said railway shall be made except as provided by ordinance.

"Sec. 17. All the privileges granted by this ordinance to said grantee shall be held to inure to the benefit of their successors and assigns, and said successors and assigns shall be subject to all the conditions, forfeitures, prohibitions and requirements imposed by this ordinance upon the original grantee.

"Sec. 18. If the said grantee shall fail to construct, operate, and maintain the railway provided for in this ordinance within six months from the date of its publication, and if it shall fail, neglect or refuse at any time during the life of this franchise to do and perform all the matters and things required of it by this ordinance, or shall at any time do any of the things prohibited by the terms of this ordinance, then all the privileges herein granted shall terminate, and this ordinance may be repealed by the mayor and city council and the grantee, its successors and assigns ousted of all right and privilege hereunder.

"But it is expressly provided that if the work or construction or the operation of said road be delayed by bona fide strikes, injunctions or legal proceedings such delay shall not work a forfeiture nor be deducted from the time above specified for the completion of said road.

"Sec. 19. No assignment or transfer of the right and privileges granted by this ordinance shall be valid unless made in writing and filed with the city clerk of the city of Olathe, Kansas, together with the written acceptance thereof in due form by the assignee and thereupon all the rights and privileges granted by this ordinance shall vest in such assignee, provided the same shall not already be forfeited and the said assignee shall at once be charged with all duties, liabilities and obligations imposed upon the original grantee.

"Sec. 20. In consideration of the granting of the aforesaid franchise the grantee agrees to pay to the city of Olathe upon the completion of the work to Water street to be done hereunder, the sum of five thousand dollars ($5,000) said sum to be applied by the mayor and the city council to such one of the two following purposes as shall seem most desirable to wit:

"(1) To the payment of the cost of widening Park street three feet on each side thereof from Church street to Water street.

"(2) To distribute said sum to the property owners on Park street, between Church street and Water street, aforesaid in the same proportion as they

would be compelled to contribute to the cost of widening said Park street between the points aforesaid if said improvement was done in the manner provided by law.

"Sec. 21. The grantee shall pay into the city treasury upon the completion of said work the sum of four thousand dollars ($4,000) in cash.

"Sec. 22. To secure the payment to the city of Olathe of the sum of nine thousand dollars ($9,000) as provided in sections 20 and 21 of this ordinance the grantee shall execute to the said city of Olathe an undertaking in the said sum of nine thousand dollars ($9,000) with sufficient sureties to be approved by the council conditioned for the payment of the said sum to the said city as provided in said sections 20 and 21, which said bond or undertaking shall be executed before the grantee begins any work of construction of its said railroad provided for in this ordinance.

"Sec. 23. By the acceptance of this ordinance and franchise the grantee agrees to dismiss its suit in equity against the city of Olathe now pending in the United States Circuit Court for the District of Kansas and waives all right and claim to any former franchise or right heretofore granted to it by the said city.

"Sec. 24. The grantee shall within one year after the publication of this ordinance establish and maintain a passenger depot and waiting room within one block of the public square adequate for the accommodation of the public traffic.

"Sec. 25. This ordinance shall take effect and be in force from and after its passage, acceptance and publication in the official paper of the city of Olathe.

"Passed and approved this 28th day of January, 1907.

"F. R. Ogg, Mayor."

Thereafter, and on the 19th day of March, 1907, said ordinance was amended by Ordinance No. 971 of defendant city in certain unimportant details. The terms and conditions of this grant as made by the city were accepted by complainant in writing on February 1, 1907. The statutory authority of defendant city to make this grant is found in section 668, Gen. St. 1905, which reads as follows:

"Before any person, firm or corporation shall have the right to enter upon the streets, alleys, public parks and grounds of any city of the second or third class in the state of Kansas for the purpose of piping the same for gas, heat, light, water, or for the construction of any railways, street railways, sewerage system, telephones, or for any other purpose whatsoever, such person, firm or corporation must first procure the passage of an ordinance by the mayor and councilmen of such city granting unto such person, firm or corporation such right or rights, and in which said ordinance shall be defined fully and at length the terms upon which said right is conceded."

Thereafter, and before August 1, 1907, complainant, in pursuance of the authority so conferred upon it by the city, proceeded to and did substantially complete its proposed line of railroad in and into the city at a cost of about $75,000, and did, as is averred in its bill of complaint, do and perform all the terms and conditions required by it to be performed under the terms of said ordinance. The defendant city, however, contending complainant had not kept and performed the obligations imposed upon it by the terms of said ordinance and its acceptance, on or about the 5th day of August, 1907, were threatening to and about to pass an ordinance repealing said former ordinance, when complainant applied to and secured a restraining order from this court enjoining defendant city from so doing. That the precise cause of complaint may be made to appear, that portion of complainant's bill of complaint is here set forth at length as follows:

"Your orator avers that, notwithstanding all the premises aforesaid, the said defendant, unmindful of your orator's vested rights under the aforesaid ordinances, but contriving and designing to wrong your orator and deprive it of the benefits and advantages belonging to it under said ordinances, did, by and through its mayor and council, on the 5th day of August, 1907, consider a resolution or ordinance or other like proceeding, the precise nature of which your orator is unadvised, repealing and abrogating the aforementioned ordinances of January 28 and March 19, 1907, and, as said defendant through its mayor and city clerk have advised your orator, said resolution or ordinance or other proceeding has been by an affirmative vote passed through two successive readings with a view to its final enactment or adoption at some succeeding meeting of said mayor and council which your orator is advised and understands will be held on the 14th day of August, 1907, and will after said final passage or adoption be immediately published in some newspaper, as required by law, and will, so far as lies in the power of said defendant city, become effective on said publication.

"Your orator avers that said action and threatened action of said mayor and council are wholly without justification, and that your orator has strictly and literally complied with all the terms and conditions necessary to the exercise of its franchise rights to enter and operate its line of railway in said city. And said defendant, so far as your orator is advised, has not made any claim to or filed with any court of law or equity any suit or proceeding to annul or abrogate your orator's franchise rights secured to it by said ordinance, but pretends to have the right in and of itself to abrogate and repeal said ordinances without any submission of its claim of right in the premises to any court of law or equity.

"Your orator says that the action and threatened action of said mayor and council repealing and abrogating the aforesaid ordinances, and terminating your orator's franchise rights thereunder, has caused it and will further cause it to be understood and believed that its said franchise rights have been justly abrogated and revoked, and that said franchise ordinances have been legally and justly repealed, and it further says that said repeal or annulment of said ordinances has and will continue to constitute a cloud on its title to the franchises, rights, and privileges theretofore conferred by said defendant, and said repealing ordinances, resolutions, or proceedings will impair the obligations of the contract entered into between said defendant and your orator by and through said ordinances and the acceptances thereof, in and by the terms of which your orator acquired and enjoys the right to operate its line of railway into said defendant city and through the corporate limits thereof. Said repeal or abrogation of said ordinances will be to the irreparable damages of your orator, and will cause it to wholly lose the large sum of money expended by it in the construction of its line into said city, as hereinbefore stated, and will cause it to lose the tolls, revenues, and profits that it otherwise would enjoy by the operation of its line into said city. Wherefore your orator charges that the said action and threatened action of said defendant is and will be in violation of section 10 of article 1 of the Constitution of the United States which ordains that no state shall pass any law impairing the obligation of contracts."

The repealing ordinance so threatened and about to be passed by the defendant city reads as follows:

"An ordinance repealing ordinance No. 962 entitled 'An Ordinance granting to the Missouri and Kansas Interurban Railway Company the right to construct, maintain and operate a railway, to be operated by electricity or any other suitable motive power except steam over and along certain streets within the city of Olathe.' And all ordinances amending said Ordinance No. 962, and to rescind, annul and set aside the franchise and all rights, privileges and powers, heretofore granted by the city of Olathe to said Missouri and Kansas Interurban Railway Company.

"Be it ordained by the mayor and councilmen of the city of Olathe, Kansas.

"Section 1. That ordinance No. 962, passed and approved by the mayor and councilmen of the city of Olathe on the 28th day of January, 1907, and

entitled 'An Ordinance granting to the Missouri and Kansas Interurban Railway Company the right to construct, maintain and operate a railway, to be operated by electricity or any other motive power except steam over and along certain streets within the city of Olathe' and all ordinances amending the same, be and are hereby repealed.

"Sec. 2. That the franchise, and that all the rights, powers and privileges, heretofore granted by the city of Olathe, to said Missouri and Kansas Interurban Railway Company are hereby rescinded, annulled and set aside.

"Sec. 3. This ordinance shall take effect and be in force from and after its publication in the official paper of the city of Olathe."

To this bill of complaint defendant demurs.

The propositions contended for by the respective parties to this litigation, as gathered from their briefs and oral arguments, are these: It is contended by the city: (1) That provision of the ordinance permitting the city to repeal it is a part of the contract between the parties, and may be exercised by the city without any impairment of the obligation of the contract, or without depriving complainant of its property rights without due process of law. Therefore it is contended no federal question is raised for decision, and this court is without jurisdiction of this controversy between citizens of this state. (2) That the consideration and passage of said proposed repealing ordinance is an act involving a legislative discretion on the part of the mayor and council of the defendant city, with which act the courts will not interfere to prevent by injunction. Complainant contends: (1) That the passage of the repealing ordinance in and of itself, unaccompanied by any other or further act on the part of the city or its officers, will operate to impair the obligation of its contract with the city, and will deprive it of its property rights granted by the ordinance without due process of law. Therefore this court has jurisdiction and power to and should enjoin the passage of the repealing ordinance. (2) Complainant further contends while the city has the power under the statute above quoted to grant to it the authority to occupy the streets and avenues of the city with its line of electric railroad, and to prescribe the terms and conditions of such grant, yet it has no power to withdraw a grant once made, and hence the provision contained in the ordinance for its repeal by the city is nugatory and void.

Conceding, for the purpose of this decision, the contention of the city as to its right to repeal the ordinance for the reason stated in section 18 thereof, above quoted, yet, as it is averred in the bill of complaint, as follows:

"Thereafter (the date of the passage of the ordinance) and up to the present time, your orator has duly performed all the terms and conditions of said ordinances of January 28 and March 19, 1907, required to be performed on its part, and within the time required for performance, and in particular your orator avers that it did during the time intervening between March 21, 1907, and the 1st day of August, 1907, substantially complete its line of railway into said defendant city and over and along the aforesaid streets granted to it for right of way purposes, and on said last-mentioned date had said line in full operation according to the terms and requirements of said ordinances, and was in the full possession and enjoyment of all the rights, privileges, and franchises conferred on it by said ordinances"

—and as the demurrer interposed admits the truth of these averments, it must be held on this branch of the case, as complainant was not

in default and had not breached its contract with the city, the attempt made by the city to repeal the ordinance and revoke the franchise granted, when the bill was filed, was an unauthorized exercise of the power of repeal reserved to the city by the terms of the ordinance. Therefore, as the repealing ordinance in express terms renounces all obligation on the part of the city to complainant and revokes all powers, privileges, franchises, and rights theretofore granted by the city to complainant, I have no doubt, as it stands admitted by the record, complainant had fully performed and had not breached its contract with the city; that such repealing ordinance, if passed, would impair the obligation of the contract between complainant and the city, and would deprive the complainant of its property rights therein without due process of law, in violation of the provisions of the federal Constitution, and that this court has the power and jurisdiction to restrain the doing of the threatened act, unless, as further contended by the city, the act threatened is in its very nature such that courts of equity will not restrain. Walla Walla v. Walla Walla Water Co., 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341; Vicksburg Waterworks Co. v. Vicksburg, 185 U. S. 65, 22 Sup. Ct. 585, 46 L. Ed. 808; Vicksburg v. Waterworks Co., 202 U. S. 453, 26 Sup. Ct. 660, 50 L. Ed. 1102; City Railway Co. v. Citizens' Railroad Co., 166 U. S. 563, 17 Sup. Ct. 653, 41 L. Ed. 1114; Iron Mountain R. Co. v. City of Memphis, 96 Fed. 124, 31 C. C. A. 410; Pikes Peak Power Co. v. City of Colorado Springs, 105 Fed. 1, 44 C. C. A. 333.

Is the threatened act here sought to be enjoined in its very nature and character such as to protect it from interference by the courts? That is to say, is the threatened act one involving legislative discretion within the sovereign power and protection of the legislative branch of the government, and for this reason beyond the power of the judicial branch of the government to prohibit? The defendant city is denominated in the bill a city of the second class. As such municipal body corporate, it must be conceded its mayor and council, under the act above quoted, section 35, c. 19, Gen. St. 1901, has the same full and complete power to legislate. concerning the subject-matter of this controversy as would the Legislature of the state itself in the absence of such grant of power to the city. And the city, in the exercise of this legislative power committed to it by the state, exercised that same high degree of sovereign legislative power possessed by the state itself. Its ordinances become a portion of the law of the state within the jurisdiction of the city. Yount v. Denning, 52 Kan. 629, 35 Pac. 207; Johnson v. Simonton, 43 Cal. 242; 1 Dill. on Municipal Corporations (4th Ed.) § 308. It is a general rule that a municipal corporation can no more be enjoined from the exercise of its legislative power over matters within its jurisdiction and control than can the exercise of legislative power by a state be enjoined. In New Orleans Waterworks v. New Orleans, 164 U. S. 481, 17 Sup. Ct. 165, 41 L. Ed. 518, Mr. Justice Harlan, delivering the opinion of the court, said:

"If it be said that a final decree against the city, enjoining it from making such grants in the future, will control the future action of the city council of New Orleans, and will therefore tend to protect the plaintiff in its rights, our answer is that a court of equity cannot properly interfere with, or in advance

restrain, the discretion of a municipal body while it is in the exercise of powers that are legislative in their character. It ought not to attempt to do indirectly what it could not do directly. In view of the adjudged cases, it cannot be doubted that the Legislature may delegate to municipal assemblies the power of enacting ordinances that relate to local matters, and that such ordinances, if legally enacted, have the force of laws passed by the Legislature of the state, and are to be respected by all. But the courts will pass the line that separates judicial from legislative authority if by any order or in any mode they assume to control the discretion with which municipal assemblies are invested when deliberating upon the adoption or rejection of ordinances proposed for their adoption. The passage of ordinances by such bodies are legislative acts which a court of equity will not enjoin. Chicago v. Evans, 24 Ill. 52, 57; Des Moines Gas Co. v. Des Moines, 44 Iowa, 505, 24 Am. Rep. 756; 1 Dillon on Mun. Corp. § 308, and notes; 2 High on Injunctions, § 1246. If an ordinance be passed and is invalid, the jurisdiction of the courts may then be invoked for the protection of private rights that may be violated by its enforcement. Page's Case, 34 Md. 558, 564; Baltimore v. Radecke, 49 Md. 217, 231, 33 Am. Rep. 239.

"As no decree can be properly rendered that will affect the rights of the beneficiaries named in the ordinances enacted before this suit was commenced —such beneficiaries not being before the court—a court of equity ought not, by any form of proceeding, to interfere with the course of proceedings in the city council of New Orleans, and enjoin that branch of its municipal government from hereafter passing ordinances similar to those heretofore enacted and which are alleged to be obnoxious to the plaintiff's rights. The mischievous consequences that may result from the attempt of courts of equity to control the proceedings of municipal bodies when engaged in the consideration of matters entirely legislative in their character are too apparent to permit such judicial action as this suit contemplates. We repeat that when the city council shall pass an ordinance that infringes the rights of the plaintiff, and is unconstitutional and void as impairing the obligation of its contract with the state, it will be time enough for equity to interfere, and by injunction prevent the execution of such ordinance. If the ordinances already passed are in derogation of the plaintiff's contract rights, their enforcement can be prevented by appropriate proceedings instituted directly against the parties who seek to have the benefit of them. This may involve the plaintiff in a multiplicity of actions. But that circumstance cannot justify any such decree as it asks."

Or, as said by Mr. Chief Justice Fuller delivering the opinion of the court in McChord v. Louisville & Nashville R. Co., 183 U. S. 483, 22 Sup. Ct. 165, 46 L. Ed. 289:

"The rule was also applied by Mr. Justice Field in Alpers v. San Francisco (C. C.) 32 Fed. 503, where complainant sought an injunction to restrain the passage of an ordinance which he alleged would impair the obligation of a contract he had with the city. Mr. Justice Field said: 'This no one will question as applied to the power of the Legislature of the state. The suggestion of any such jurisdiction of the court over that body would not be entertained for a moment. The same exemption from judicial interference applies to all legislative bodies, so far as their legislative discretion extends. * * * The courts cannot in the one case forbid the passage of a law nor in the other the passage of a resolution, order or ordinance. If by either body, the Legislature or the board of supervisors, an unconstitutional act be passed, its enforcement may be arrested. The parties seeking to execute the invalid act can be reached by the courts, while the legislative body of the state or of the municipality, in the exercise of its legislative discretion, is beyond their jurisdiction. The fact that in either case the legislative action threatened may be in disregard of constitutional restraints, and impair the obligation of a contract, as alleged in this case, does not affect the question. It is legislative discretion which is exercised, and that discretion, whether rightfully or wrongfully exercised, is not subject to interference by the judiciary.'"

While decisions to the contrary may be found, I do not find the Supreme Court has ever departed from the general rule so forcibly and clearly stated in the above opinions. True, there are cases holding an injunction may issue to restrain the passage of a municipal ordinance void for want of power, where the very fact of its passage, unaccompanied by any other act done or threatened by the city, would work to the complainant immediate and irreparable injury, notably the cases of Spring Valley Waterworks Co. v. Bartlett (C. C.) 16 Fed. 615, and Leverich et al. v. Mayor, etc., of Mobile et al. (C. C.) 110 Fed. 170. However, I do not find the doctrine there announced sanctioned by any decision of the Supreme Court. Its soundness is open to much doubt, and, even if such rule of decision may, from stress of extraordinary circumstances, obtain in any case, I am convinced such case is not made out by the bill filed in the case at bar. The act of the mayor and council of defendant city in considering and adopting or rejecting the repealing ordinance in question is clearly one involving the exercise of legislative discretion on the part of the lawmaking body of the city. The exercise of such legislative power under our form of government must be and ever remain free and untrammeled beyond the power of the judiciary to prevent or the executive to punish. Such legislative act must reflect the judgment and conscience of the appropriate lawmaking power as to what the law shall or shall not be, and when the legislative will has spoken and the exercise of legislative power has spent its force, and the new law thus brought into existence as a result of such legislative action stands complete, and some attempt is made or threatened to put such completed effort of the legislative branch of the government into effect to the irreparable injury and damage of any person affected thereby, then, in my judgment, and not until then, may he be heard by the judicial branch of the government to assert the invalidity of such action because repugnant to some provision of the organic law. A contrary holding would, to my mind, tend to make the sovereign legislative branch of our government subservient to the judicial branch, to impose the judgment of our courts in the place of the will of our lawfully constituted legislators, a result dangerous in its tendency, desired by none.

It follows from what has been said, the full scope, object, and purpose of the bill in this case being to secure injunctive relief against the exercise of a legislative function—the consideration and passage of the repealing ordinance in question—such relief cannot be afforded complainant in this suit.

The demurrer will be sustained.