684

UNITED STATES ex rel. NOEL v. CARMODY.

No. 8869.

United States Court of Appeals District of Columbia.

Argued Feb. 21, 1945.

Decided March 26, 1945.

Mr. Russell Hardy, of Washington, D. C., for appellant.

Mr. Leo A. Rover, of Washington, D. C., with whom Messrs. Walter M. Bastian and Godfrey L. Munter, both of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and EDGERTON and ARNOLD, Associate Justices.

ARNOLD, Associate Justice.

This is an action in quo warranto to remove respondent, John J. Carmody, from the office of President of the Bar Association of the District of Columbia on the ground that his election to that office was in violation of the by-laws of the Association. The court below entered judgment dismissing the complaint, from which order this appeal is taken.

The sole interest of the relator is that of a member of the Association. Respondent argues that under the statutes of the District of Columbia a court has no jurisdiction to issue a writ of quo warranto against an officer of a private corporation except in a case where the relator himself is seeking the same office.

We cannot agree with this contention. To sustain the broad proposition that a writ of quo warranto cannot issue against an officer of a private corporation on complaint of one of its members or stockholders would be to leave them without an effective remedy in most cases of illegal corporate elections. It would limit their relief to a bill in equity which would lie only in a case where some damage to the member's interest was the actual or probable result of the illegal election. Such a limitation would open a wide field for uncurbed disregard of corporate by-laws in the election of corporate management.

Nothing in the history of the writ of quo warranto or in the District of Columbia Code justifies denying this remedy to stockholders or members of private corporations, and certainly no principle of justice or convenience supports the limitation. Under the District Code[1] a writ of quo warranto may be issued "Against a person who usurps, intrudes into, or un-

---

[1] D.C.Code, Title 16, §§ 1601–1604 (1940).

lawfully holds or exercises within the District * * * an office in any domestic corporation." The action may be brought by the Attorney General "or on the relation of a third person." The circumstances which entitle a third person to the writ are explicitly set out. If the Attorney General and the District Attorney refuse to act on the request of the "person interested" the court may issue the writ on such person's verified petition "if * * * the reasons set forth in said petition are sufficient in law." There is a section requiring one claiming the same office to set forth the facts on which he bases his claim but it limits in no way the rights of other interested persons to obtain the writ.

■ Obviously the statute leaves the former common-law principles governing the issuance of writs of quo warranto in full force. As early as 1834, in the case of Gunton v. Ingle,[2] the principle that a member of a private corporation was entitled to apply for a writ of quo warranto against the corporate official was announced without qualification by the Circuit Court of the District of Columbia. That case has not been reversed or modified. Its principle has received legislative sanction in our present Code.

■ The matter would scarcely require discussion were it not for an observation which appears in our opinion in the case of Columbian Cat Fanciers, Inc., v. Koehne.[3] In that case, which was prior to the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, the trial court dismissed a bill in equity brought by a member of the Cat Fanciers to restrain persons purporting to act as its officers from taking possession of its property. The reason for the lower court's dismissal was that quo warranto was an adequate remedy at law and hence a bill in equity would not lie. This court reversed, holding that a writ of quo warranto was not an adequate substitute for an injunction where the bill alleged facts showing the necessity of protecting corporate property. The broad statement that only a claimant for office can bring the writ of quo warranto was unnecessary to the decision of the

case and, as the Supreme Court said in Cohens v. Virginia, 6 Wheat. 264, 399, 5 L.Ed. 257: "may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision."

The cases which hold that a taxpayer may not test the authority of a public officer by writ of quo warranto[4] are not relevant here. They involve a right belonging to the whole body of the public which can be protected only by a public representative. The distinction has been well stated as follows:[5] "In the strictest sense, the usurpation of a public office and the abuse of a public franchise are not, at common law, private injuries, and the remedy by quo warranto must be on the suggestion of the attorney general * * *; but in questions involving merely the administration of corporate functions, and not to dissolve the corporation, as the election of officers, quo warranto may issue at the suit of the attorney general, or of any person or persons having an interest injuriously affected and desiring to prosecute the same. * * *"

■ Since the court below had jurisdiction to issue the writ, the remaining question presented by the record is whether it properly exercised its discretion[6] in denying it. To answer this question it is necessary to examine the record. It appears that the by-laws of the Association provide for a Committee on Nominations which shall propose and nominate at least two and not more than three names for each of the offices to be filled at an ensuing election (except the offices of Secretary and Treasurer). The by-laws further provide that no nomination shall be considered unless made in conformance with the by-laws.

The complaint charges that the members of the Committee on Nominations agreed that for the purpose of procuring the election of the respondent and preventing the election of anyone else to the office of President they would disregard the by-law and make the respondent their sole nominee. This charge is denied. However, the pleadings admit that the Committee did not comply with the by-laws and that the re-

---

[2] C.C.D.C.,1834, Fed.Cas.No.5,870.

[3] 1938, 68 App.D.C. 257, 96 F.2d 529. Cf. Hayes v. Burns, 1905, 25 App.D.C. 242, 4 Ann.Cas. 704.

[4] Newman v. United States, 1915, 238 U.S. 537, 35 S.Ct. 881, 59 L.Ed. 1446.

[5] Ferris, Extraordinary Legal Remedies, 1926, § 123; State ex rel. Mitchell v. Horan, 1900, 22 Wash. 197, 60 P. 135.

[6] High, Extraordinary Legal Remedies, 1896, § 605.

spondent actually was their only nominee. In justification of its non-compliance the Committee on Nominations reported its inability to discover among the members of the Association any person, except the respondent, who was both qualified for the office of President and at the same time willing to be considered. The Diogenes-like persistence of the Committee in trying to find more than one person out of the eighteen hundred members of the Association both qualified and willing to accept the nomination of President is disclosed by the affidavit of the chairman. He states that seven members whose names he can remember and several others whose names he cannot recall were approached. All of them declined to accept. At that point the Committee gave up its search as hopeless.

At the election two candidates were voted on,—the respondent, who was the sole nominee of the Committee, and a nominee presented by petition of twenty-six members of the Association in conformance with another by-law. Respondent received the overwhelming majority of the votes but appellant contends that under the by-laws the Association had no authority to vote for respondent since he was not properly nominated.

We have stated the case most strongly against respondent,—ignoring his contention that since two candidates were actually voted on the election was therefore valid,—because we believe that even in this view the court below properly exercised its discretion in dismissing the complaint. Had the case involved a stockholder with a financial interest in a corporation or had the election affected any property right of the relator the facts stated in the petition would have required a hearing and a decision whether the election was valid.[7] Corporations whose principal activity is the administration of property must be held in strict compliance with their election by-laws even though an invalid election is not shown to have caused actual or probable damage to those interests. But the Bar Association does not deal with property except incidentally. Its officers and members are solely interested in unremunerated public service. Its objectives are to maintain the honor and dignity of the profession and to promote the administration of justice.

It is idle to expect that voluntary public or community service, not involving the administration of property or money, will ever be carried on with the meticulous observance of charters and by-laws required in the administration of property or money. The interest that holds community service organizations together is not property but the unselfish spirit of those willing to sacrifice their time and energy to a public cause. That interest would not be protected but destroyed by strict judicial supervision of elections in such agencies on complaint of their members. The court would find itself a constant intermeddler in community affairs serving no purpose other than to disrupt the morale and good will of voluntary organizations. To make community service as technical as business dealings would be to destroy the spirit which sustains it.

We do not hold that a case may not be stated justifying the issuance of a writ of quo warranto on behalf of a member of a corporation organized, like the Bar Association, solely for voluntary public or community service. But such a case would have to be one where the respondent obtained his office under circumstances so contrary to fundamental democratic procedure as to give positive indication that he had not been actually chosen by the members to represent the Association, or else circumstances under which respondent's unwarranted pretense to office endangered the public purpose for which the Association was formed. No such situation is before us here. Regardless of the technical correctness of the procedure under which respondent was elected, there is no doubt that he is the voluntary choice of the overwhelming majority who voted for the office of President of the Bar Association of the District of Columbia. Nor does the record disclose any facts which reflect on the high character of the service which may be expected from the respondent during his tenure in office.

Judgment dismissing the complaint will, therefore, be

Affirmed.

[7] See Commonwealth ex rel. Morris v. Stevens, 1895, 168 Pa. 582, 32 A. 111; State ex rel. Mitchell v. Horan, supra, note 5.